IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

**STATE FARM AUTOMOBILE**
**INSURANCE CO.**                                                                  **PLAINTIFF**

v.                          Case No. 2:15-cv-00046-KGB

**GRANT LONG, JR. and**
**RALPH MATARAZZO**                                                        **DEFENDANTS**

## OPINION AND ORDER

Before the Court is plaintiff State Farm Automobile Insurance Co.'s ("State Farm") motion for summary judgment (Dkt. No. 41). Defendant Ralph Matarazzo has responded in opposition to the motion for summary judgment (Dkt. No. 46). Defendant Grant Long, Jr. has not responded; a default was previously entered against Mr. Long in this matter (Dkt. No. 23). For the following reasons, the Court grants the motion for summary judgment (Dkt. No. 41)**.**

**I.      Procedural Background**

Mr. Matarazzo asserts that Mr. Long was driving a vehicle insured by State Farm when an accident occurred on May 5, 2015, in St. Francis County, Arkansas (Dkt No. 1, ¶ 5). Both Mr. Long and Mr. Matarazzo were served personally with the summons and complaint on April 27, 2015 (Dkt. Nos. 3, 4). Mr. Matarazzo filed his answer on June 2, 2015 (Dkt. No. 6). On May 16, 2016, counsel for Mr. Matarazzo filed with the Court a notice of Mr. Long's discharge in bankruptcy (Dkt. No. 21). Mr. Long is in default in this matter and has not appeared since the Clerk's entry of default (Dkt. No. 23).

Mr. Matarazzo filed a motion to stay discovery and appoint counsel for Mr. Long (Dkt. No. 31). The Court denied that motion (Dkt. No. 52).

## II. Factual Background

The following facts are taken from State Farm's statement of undisputed facts unless otherwise indicated (Dkt. No. 43). In Mr. Matarazzo's statement of facts, he states that "[Mr.] Matarazzo does not believe the substantive facts in the case are disputed. The facts surrounding the issuance of the policy and the underlying accident are agreed by the parties to this action. The disputes arise in the ambiguity, interpretation, and meaning of the terms of the insurance contract at issue." (Dkt. No. 49, ¶ 1).

State Farm issued an automobile liability insurance policy, policy number 257 6126-F24-04A ("the Policy"), to Sedrick Hicks and Ashiya Hudson with a policy period of December 2, 2013, to June 24, 2014 (Dkt. No. 41, Ex. A). Mr. Hicks and Ms. Hudson were current on all premiums owed under the Policy for the policy period. The named insureds for the Policy were Mr. Hicks and Ms. Hudson. The vehicle listed on the Declarations Page of the Policy was a 2007 Infiniti QX56.

Mr. Long was involved in a motor/vehicle pedestrian accident with Mr. Matarazzo on May 5, 2014, in St. Francis County, Arkansas. The motor/vehicle pedestrian accident between Mr. Long and Mr. Matarazzo occurred while Mr. Long was operating and transporting the 2007 Infiniti QX56 with Ms. Hudson's consent and permission in the course and scope of his employment as owner of Grant's Car Wash. Mr. Matarazzo has filed a civil suit against Mr. Long in the Circuit Court of St. Francis County, Arkansas, case number 62CV-2014-217-2, seeking monetary damages for alleged bodily injuries he sustained as a result of the May 5, 2014, motor vehicle/pedestrian accident.

Pursuant to the "**Insuring Agreement**" in the Policy, State Farm agreed to pay:

a. damages an *insured* becomes legally liable to pay because of:

(1) ***bodily injury*** to others; and

(2) damage to property

caused by an accident that involves a vehicle for which that ***insured*** is provided Liability Coverage by this policy.

(Dkt. No. 41-1, at 11).

"Insured" is defined in the Policy in pertinent part as:

3. Any other ***person*** for his or her use of:

    a. ***your car,***

    b. ***a newly acquired car,***

    c. a ***temporary substitute car,*** or

    d. a ***trailer*** while attached to a ***car*** described in a., b., or c. above.

Such vehicle must be used within the scope of ***your*** consent. . . .

*(Id.* at 10-11*).*

**You** or **Your** is defined in pertinent part in the Policy as "the named insured or named insured shown on the Declarations Page." (*Id.* at 10*).*

There are various enumerated "**Exclusions**" in the Policy regarding coverage provided to an "***insured***." One of the **Exclusions** precludes liability coverage for an ***insured***:

    8.    WHILE MAINTAINING OR USING THE VEHICLE IN CONNECTION WITH THAT **INSURED'S** EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A CAR BUSINESS.

*(Id.*, at 12).

In the Policy, the term "car business" is defined as "a business or job where the purpose is to sell, lease, rent, repair, service, modify, transport, store, or park land motor vehicles or any type of trailer." (*Id.,* at 9).

This Exclusion goes on to state:

8. . . . This exclusion does not apply to:

   a. **you**; or

   b. any **resident relative**

   While maintaining or using *your car*, *a newly acquired car*, *a temporary substitute car*, or a *trailer*.

*(Id.,* at 12). Again, "**you**" or "**your**" is defined in pertinent part in the Policy as "the named insured or named insured shown on the Declarations Page." *(Id.,* at 10). "**Resident relative**" is defined as a **person**, other than **you**, who resides primarily with the first person shown as a named insured on the Declaration Page and who is: (1) related to that named insured or his or her spouse by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise maintains his or her primary residence with that named insured; or (2) a ward or a foster child of that named insured, his or her spouse, or a person described in subparagraph one. *(Id.,* at 9-10).

State Farm states that on May 5, 2014, Mr. Long "owned and operated a car business, Grant's Car Wash, which repaired, modified, cleaned, detailed, transported and serviced motor vehicles." (Dkt. No. 43, at 3, ¶ 9). Mr. Matarazzo denies these allegations (Dkt. No. 49, at 2, ¶ 9). Instead, Mr. Matarazzo argues that "[i]t is disputed whether or not Grant Long, Jr. fits the definition of an 'insured' as referenced in paragraph 8 of the Exclusions to Liability Coverage." (Dkt. No. 47, at 1, ¶ 2).

State Farm further contends that on May 5, 2014, Ms. Hudson retained the services of Mr. Long and "permissively allowed him to operate and transport her 2007 Infiniti QX56 in the course and scope of his employment as owner of his car business, Grant's Car Wash, for the purpose to repair, service and transport the vehicle." (Dkt. No. 43, at 3, ¶ 10). Again, Mr. Matarazzo denies these allegations (Dkt. No. 49, at 2, ¶ 10). Instead, Mr. Matarazzo argues that "[i]t is disputed whether or not Grant Long, Jr. was using the vehicle in connection of [sic] a 'car business' as defined in the DEFINITIONS section of the policy. [ ] It is disputed whether or not Grant Long, Jr.'s purpose in using the vehicle was to 'repair' the vehicle as the term is commonly used and understood in society, in the insurance and automotive industries, and in the contract here. [ ] It is disputed whether or not Grant Long, Jr.'s purpose in using the vehicle was to 'service' the vehicle as the term is commonly used and understood in society, in the insurance and automotive industries, and in the contract here. [ ] It is disputed whether or not Grant Long, Jr.'s purpose in using the vehicle was to 'transport' the vehicle as the term is commonly used and understood in society, in the insurance and automotive industries, and in the contract here. [ ] It is disputed whether or not Grant Long, Jr.'s purpose in using the vehicle was to 'modify' the vehicle as the term is commonly used and understood in society, in the insurance and automotive industries, and in the contract here. [ ] It is disputed whether or not Grant Long, Jr. was using the vehicle to 'repair' the vehicle as the term is commonly used and understood in society, in the insurance and automotive industries, and in the contract here." (Dkt. No. 47, ¶¶ 2-8).

**III.     Standard of Review**

Summary judgment is proper when there is no genuine issue as to any material fact and when the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Holloway v. Lockhart*, 813 F.2d 874, 878 (8th Cir. 1987). A factual dispute is genuine if the evidence could

cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989). However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**IV. Analysis**

This Court has diversity jurisdiction, and this case is governed by Arkansas law. *Am. Eagle Ins. Co. v. Thompson,* 85 F.3d 327, 330 (8th Cir. 1996). State Farm asserts that, as there is no coverage under the operative policy number 257 6126-F24-04A, "State Farm has no duty to provide a defense to or indemnify Mr. Long for damages arising out of the motor vehicle/pedestrian accident between he and Mr. Matarazzo on May 5, 2014." (Dkt. No. 32, ¶ 1). State Farm maintains that Mr. Long was operating a vehicle owned by Mr. Hicks in the course and scope of his employment with Grant's Car Wash, which precludes coverage for the accident at issue based on the "car business" exclusion in the Policy (Dkt. No. 32, Ex. A). A review of the Policy shows that Mr. Long is not the named insured or policy holder of the Policy; the Policy was issued to Mr. Hicks and Ms. Hudson (*Id.*). Mr. Matarazzo argues that "[t]he seminal terms in the contract concern who is an 'insured' and what constitutes a 'car business.'" (Dkt. No. 50, at 1).

6

State Farm asserts that, by definition, Mr. Long was insured under the policy as a permissive driver of the vehicle he operated at the time of the accident (Dkt. No. 51, ¶ 10). State Farm argues that it had a duty to provide to Mr. Long legal services in a state court action against him for damages stemming from this accident while State Farm investigated whether there was coverage under the policy, but State Farm maintains that there is no duty under the policy to provide to Mr. Long a defense in the case at bar, as this action does not seek to recover damages from the defendants (Dkt. No. 21, ¶ 2). The Court agrees that Mr. Long's status as a defined insured does not convert Mr. Long to a named insured or holder of policy number 257 6126-F24-04A.

### A. Construction Of The Insurance Contract

The well-established rules of construction of an insurance contract are outlined by the Arkansas Court of Appeals in *Anderson Gas & Propane, Inc. v. Westport Ins. Corp.,* 140 S.W.3d 504, 507 (Ark. App. 2004). An insurance policy is to be construed strictly against the insurer, who chooses its language. The construction and legal effect of written contracts are matters to be determined by the court, not by the jury, except when the meaning of the language depends upon disputed extrinsic evidence. *Southall v. Farm Bureau Mut. Ins. Co.*, 632 S.W.2d 420 (Ark. 1982) (citing *Ark. Rock & Gravel Co. v. Chris-T-Emulsion Co.*, 536 S.W.2d 724 (Ark. 1976); *Security Ins. Co. v. Owen*, 480 S.W.2d 558 (Ark. 1972)).

It is fundamental that an insurance policy, like any other contract, must be read as a whole. *Sovereign Camp Woodmen of the World v. Hardee,* 66 S.W.2d 648 (Ark. 1934). Exclusions to insurance coverage are to be strictly construed, and all reasonable doubts must be resolved in favor of the insured. *State Farm Mutual Automobile Insurance Co. v. Traylor,* 562 S.W.2d 595 (Ark. 1978). The test for ambiguity is whether the language is reasonably susceptible to more than one

interpretation. *Curly v. Old Reliable Cas. Co.*, 155 S.W.3d 711, 713 (Ark. App. 2004). "The initial determination of the existence of an ambiguity in a contract rests with the trial court, and if an ambiguity exists, the meaning becomes a question of fact for the fact finder." *Keller v. Safeco Insurance Company of America*, 877 S.W.2d 90, 93 (Ark. 1994).

      **B.**    **The Term "Insured"**

At the outset of his arguments, Mr. Matarazzo argues that Mr. Long is not an "insured" as defined in the Policy at issue (Dkt. No. 46, ¶ 4). State Farm asserts that this is incorrect, as Mr. Matarazzo confuses an "insured" as defined in the Policy with a "policy holder." (Dkt. No. 50, at 3). State Farm does not contend that Mr. Long is the "policy holder" or "named insured" of the Policy; however, State Farm argues that Mr. Long is an "insured" by definition in the Policy. The Policy defines "insured" as:

> ***Insured*** means:
>
> . . .3. any other ***person*** for his or her use of:
>
> > a. ***your car***,
> > b. a ***newly acquired car***,
> > c. a ***temporary substitute car***, or
> > d. a ***trailer*** while attached to a ***car*** described in a., b., or c. above.
>
> Such vehicle must be used within the scope of ***your*** consent . . . .

(Dkt. No. 41-1, at 10-11).

State Farm contends that Mr. Long is "considered an insured by definition under the policy as he was operating the insured vehicle" listed on the Declarations Page, a 2007 Infiniti QX56, with the permission of Ms. Hudson, the named insured, at the time of the motor vehicle/pedestrian accident at issue (Dkt. No. 41, ¶ 3).

8

The Court concludes that the Policy's definition of an "insured" is unambiguous and finds that Mr. Long fits the operative definition, as Ms. Hudson gave her consent for Mr. Long to use her vehicle. State Farm has not moved for summary judgment on this issue. Instead, State Farm only argues that Mr. Long and his actions fit under the "car business" exclusion thereby precluding coverage.

### C. The "Car Business" Exclusion

State Farm argues that, "[t]he case at bar is similar to the following cases where the court enforced an exclusionary clause in a policy and determined there was no coverage for damages arising from the underlying cause of action." (Dkt. No. 42, at 6). State Farm cites this Court to the following cases: *Freeman v. State Farm Mut. Auto Ins. Co.*, 436 F.3d 1033 (8th Cir. 2005) (holding that a household exclusion clause excluded coverage for damages arising out of a motor vehicle accident), *Campbell v. American Farmers Mut. Ins. Co.,* 238 F.2d 284 (8th Cir. 1956) (affirming the district court's decision that the teacher was an employee engaged in the employment of the school district at the time of her accident within the meaning of the policy exclusion), *Phillips Motor Co. v. United States Guarantee Co.*, 285 S.W.2d 333 (Ark. 1955) (holding that the insured relinquished possession of the vehicle, thus, the exclusionary clause of the policy applied and the insured was unable to recover its loss), and *General Agents Ins. Co. of Am. v. Tri-Eagle Enters.*, 1994 Ark. App. LEXIS 576 (Ark. App. 1994) (holding that the insurance contract exclusion which excluded coverage for acts under false pretenses was not ambiguous) (Dkt. No. 42, at 6). The Court notes that none of these cases cited by State Farm address a "car business" exclusion like the one at issue in this matter.

Mr. Matarazzo contends that the term "car business" in the Policy, which is defined as "a business or job where the purpose is to sell, lease, rent, repair, service, modify, transport, store, or

9

park land motor vehicles or any type of trailer," is ambiguous (Dkt. No. 50, at 5). State Farm argues that the "car business" exclusion in the Policy is clear and unambiguous. This Court must decide whether or not the "car business" exclusionary clause is ambiguous such that the ambiguity is an issue for the fact finder. *See Curly*, 155 S.W.3d at 713; *see also Keller*, 77 S.W.2d at 93.

State Farm argues that, "[a]s the purpose of Mr. Long's operation of the QX56 at the time of the accident was to service and transport the vehicle back to Ms. Hudson, his conduct would fit the definition of the car business exclusion in the policy" (Dkt. No. 42, at 9). Mr. Matarazzo argues that, "[e]ven with the largest stretch of the imagination, it could not seriously be contended that a car wash, the purpose of which is to clean a car, is the equivalent to a business whose purpose is repairing, modifying, or transporting a vehicle. Moreover, the traditional definition of 'servicing' a vehicle concerns having the oil changed, changing a fuel/air filter, checking tire pressure, etc. One would not tell his friend he was having his car 'serviced' if he were having it washed." (Dkt. No. 50, at 5).

The Court notes that, based upon its research, no Arkansas court has analyzed a "car business" exclusion like the one at issue in this matter. Courts from other jurisdictions have analyzed such language.

Mr. Matarazzo cites the Court to two state court cases from Michigan, both of which have been overruled. *See State Farm Mutual Automobile Ins. Co. v. Snappy Car Rental*, 492 N.W.2d 500 (Mich. Ct. App. 1992), *overruled by State Farm Mutual Ins. Co. v. Enterprise Leasing Co.*, 549 N.W.2d 345 (Mich. 1996); *see also Enterprise Leasing Co. v. Sako*, 526 N.W.2d 21 (Mich. Ct. App. 1994), *overruled in part by State Farm Mutual Ins. Co. v. Enterprise Leasing Co.*, 549 N.W.2d 345 (Mich. 1996). However, the cases cited by Mr. Matarazzo lead the Court to somewhat similar cases that have not been overruled. The Court notes that these cases are only persuasive

10

authority and do not address a car wash; the cases involve rental car agencies but pertain to and analyze the same "car business" exclusion.

In *State Farm Mutual Automobile Insurance Co. v. Enterprise Leasing Co.*, 549 N.W.2d 345, 351 (Mich. 1996), a Michigan state court analyzed a "car business" exclusion in a State Farm insurance agreement but analyzed specifically the terms "rent" and "lease." That court reasoned, "Enterprise asserts that the terms 'rent' and 'lease' are not synonymous, and that its business of renting cars is not a 'car business.' We tend to agree. The term 'lease' as it refers to cars is well understood to mean a long-term rental, similar to ownership, and is differentiated from a short-term rental. To the extent that there is ambiguity in the policy meaning of 'lease,' it is resolved in favor of Enterprise." *State Farm Mut. Auto. Ins. Co.,* 549 N.W.2d at 351. *See also State Farm Mutual Auto Insurance Co. v. Bogart,* 717 P.2d 449 (Ariz. 1986) (affirming the trial court finding that the exclusion relied on by State Farm was ambiguous when the policy was considered as a whole, as it must be, in relation to the car rental business)

Courts that have examined this language, or similar language, in relation to a car wash have concluded that the language is not ambiguous. Instead, these courts have determined that, as a matter of law, the exclusion applied to preclude coverage based on the facts presented. For example, in *Fuller's Car Wash, Inc. v. Liberty Mutual Insurance Co.*, 698 N.E.2d 237 (Ill. App. Ct. 1998), the Illinois Appellate Court decided an issue of first impression in Illinois – the applicability of the exclusionary language to the car wash business. *Id*., at 240. On May 20, 1993, Robert Lamkin brought his vehicle to Fuller's to be washed. *Id*., at 238. Allegedly, a Fuller's employee negligently drove Mr. Lamkin's vehicle and struck and injured another Fuller's customer. *Id*. The *Fuller* court examined policy language that stated, in pertinent part:

The following are insureds:

    a. You for any covered auto.

    b. Anyone else while using with your permission a covered auto you own, hire or borrow except:

    . . .

    (3) Someone using a covered auto while he or she is working in a business of selling, servicing, repairing or parking autos unless that business is yours.

*Id.*, at 240.

The *Fuller* court determined the definition of "servicing" to be "the act of providing service." *Id.* (citing *Webster's Third New International Dictionary* 2076 (1993)). The court concluded that, "[a]pplying the plain and ordinary meaning of [the] automobile exclusion, we hold that the exclusion applies to the case at bar. It is uncontroverted that Fuller's was in the business of washing and vacuuming cars. Clearly, these services are provided for the purpose of maintenance." *Id.*, at 241. The *Fuller* court determined the automobile business exclusion in the car wash context was not ambiguous in the context of the facts presented, given the common meaning of the term "servicing" and its application to the car wash business. *Id.*, at 242. Further, the *Fuller* court rejected the argument that the automobile business exclusion did not apply because Fuller's did not also dispense gasoline. *Id.*; *cf. Georgia Mut. Ins. Co. v. Kurtz*, 426 S.E.2d 248, 249 (1992) (determining an automobile exclusion stating specifically that it included coverage for accidents "arising out of the operation of a . . . service station" did not apply to a car wash business because the business did not also sell gasoline).

The *Fuller* court observed that its decision was consistent with that of the court in *Metropolitan Property & Liability Insurance Co. v. Mr. Pride of Atlanta, Inc.*, 374 S.E.2d 82 (Ga. 1988). In *Mr. Pride*, an employee of a car wash negligently drove a customer's car into the drying bay of a car wash and struck and killed two patrons. *Id*. The owner of the car was insured by

Metropolitan, which denied coverage based on an automobile business exclusion similar to the one in *Fuller*.

The specific exclusion at issue in *Mr. Pride* stated: "We do not cover. . . (e) bodily injury or property damage arising out of the automobile business operations." *Mr. Pride*, 374 S.E.2d at 82. The policy defined "automobile business operations" as "the business or occupation of selling, leasing, repairing, servicing, storing, or parking motor vehicles or trailers." *Mr. Pride*, 374 S.E.2d at 82. The Supreme Court of Georgia determined that the car wash was in the business of "servicing" automobiles, and therefore, the employee was excluded from coverage. *Mr. Pride*, 374 S.E.2d at 82.

Likewise, in *Smith v. State Farm Mutual Automobile Insurance Co.*, 387 S.E.2d 623 (Ga. Ct. App. 1989), the trial court granted summary judgment and denied coverage based on the unambiguous language of the exclusion. *Id*., at 348. In *Smith*, a partner in a car wash business was involved in a collision while driving a vehicle to the vehicle owner's home from the car wash where it had been washed. *Id*. Each policy at issue contained an automobile business exclusion. One policy stated "[t]here is no coverage for non-owned cars. . . being repaired, serviced or used by any person while that person is working in any car business. . . ." *Id*. The other policy, the vehicle owner's policy, stated that it did not cover the insured vehicle while it is "being repaired, serviced or used by any person employed or engaged in any way in a car business. . . ." *Id*. Each policy defined "car business" as "a business or job where the purpose is to sell, lease, repair, or service, transport, store or park/land motor vehicles or trailers." *Id*. The *Smith* court concluded that, due to the *Mr. Pride* decision, "it is not questioned that the act of washing the vehicle fell within the exclusion" and rejected attempts to distinguish the facts of the two cases. *Id*.; s*ee also*

13

*United States Fidelity & Guaranty Co. v. State Farm Mutual Automobile Insurance Co.*, 392 S.E.2d 574 (Ga. Ct. App. 1990) (same).

In *Pennsylvania National Insurance Co. v. Morasco-Knee-Soxman, Ltd.*, 702 A.2d 867 (Pa. 1997), the Superior Court of Pennsylvania determined that, as a matter of law, an automobile business exclusion applied. In *Pennsylvania National*, an employee of Morasco drove an insured vehicle to a nearby automated car wash. *Id.*, at 868. Upon arrival, the Morasco employee exited the vehicle so that it could be washed. *Id*. After the vehicle passed through the automated system, an employee of the car wash entered the vehicle and drove it to a parking area so that it could be dried. *Id*. While driving the vehicle, the employee of the car wash struck and injured two individuals. *Id*. The court observed that the issue presented was whether the car wash employee "was working 'in a business of servicing autos'" when he struck the individuals with the car. *Id*. The *Pennsylvania National* court determined "as a matter of law, the car wash was 'in the business of servicing autos,' and, therefore, that the exclusion applie[d]." *Id*.

The Court acknowledges that the cases cited are persuasive authority only and not binding precedent. This Court has been provided with no case, and has discovered no case through its own research, determining that when a car wash is at issue the car business exclusion is ambiguous or presents an issue of fact for the factfinder. Instead, in all of the cases this Court reviewed, the courts determined there was no ambiguity in the language, that the exclusion covered the car wash activities at issue, and that the exclusion precluded coverage.

The Court also finds instructive *Toler v. State Farm Mutual Automobile Insurance Co.*, 64 Fed. Appx. 388 (4th Cir. 2003). In *Toler*, the court examined the car business exclusion and specifically the phrase "engaged in any way" as it appeared in that exclusion. The accident giving rise to the suit occurred while Teresa, as a favor to her husband and his auto repair business, M&R

14

Autoworks ("M&R"), was transporting a car that M&R was repairing to a car dealership for additional repairs that M&R was not equipped to complete. *Id.*, at 388-89. Teresa was a passenger in the under-repair car, and her friend drove the car to the dealership. *Id.* at 389. On the way to the dealership, the under-repair car was struck by another vehicle, and Teresa was injured as a result. *Id.*

Two insurance policies were at issue in *Toler*, and both included a car business exclusion which stated that there was no coverage while a non-owned car is used by any person employed or engaged in any way in a car business. *Id.* On appeal, Teresa claimed that she and her friend were not engaged in the car business as they were not employees of, paid by, or controlled by M&R. *Id.*

The Fourth Circuit Court of Appeals rejected the argument, relying on the phrase "engaged in any way." *Id.* The court reasoned that "[t]he addition of the term 'engaged' to the exclusion makes sense only as being an effort to extend the exclusion beyond those who are employed also to those who are engaged in a car business." *Id.* The court affirmed the district court's grant of summary judgment to State Farm.

The language of the exclusion at issue in this case provides that there is no coverage "for an insured" "[w]hile maintaining or using that vehicle in connection with that insured's employment in or engagement of any kind in a car business." (Dkt. No. 41, Ex. A). The Policy defines "car business" as "a business or job where the purpose is to sell, lease, rent, repair, service, modify, transport, store, or park land motor vehicles or any type of trailer." (*Id.*).

Like those courts cited, this Court concludes that, as a matter of law, while driving the Infiniti QX56 with the permission of Ms. Hudson at the time of the motor vehicle/pedestrian accident, Mr. Long was employed or engaged in a car wash which was in the business of servicing

15

motor vehicles. In other words, as a matter of law, Mr. Long was employed or engaged in the car business, and the exclusion applies.

Mr. Matarazzo asserts that there is an exception to the car business exclusion which prevents the exclusion from applying in this case, even if Mr. Long is an insured and the other qualifications for the exclusion are met. Mr. Matarazzo argues that, even if the Court decides that Mr. Long qualifies as an "insured" under the Policy, "the policy clearly does not apply to [Mr.] Hick's and [Ms.] Hudson 'maintaining' the subject vehicle." (Dkt. No. 50, at 4). Mr. Matarazzo argues that, "[h]aving a vehicle routinely cleaned is the equivalent to 'maintaining' the vehicle" which he contends is expressly excluded from paragraph 8 (Dkt. No. 50, at 4).

The Court is not persuaded that the language upon which Mr. Matarazzo relies has any impact on Mr. Long's status under the Policy or the application of the car business exclusion to him. The language is as follows:

> This exclusion does not apply to:
>
> > a. **you**; or
> >
> > b. any **resident relative**
>
> While maintaining or using *your car*, *a newly acquired car*, *a temporary substitute car*, or a *trailer*.

(Dkt. No. 41-1, at 12). Mr. Long was operating the vehicle at the time of the May 5, 2015, accident, not Mr. Hicks, Ms. Hudson, or any resident relative. The Court does not see how, given the express language of this exception, Mr. Matarazzo contends this exception to the exclusion applies to Mr. Long. Mr. Long is not "the named insured or named insured shown on the Declaration Page." (*Id.*, at 10*)*. Therefore, he does not meet the definition of "you" under the Policy. He also does not meet the definition of "resident relative" under the Policy (*Id.* at 9-10). For these reasons, the Court rejects Mr. Matarazzo's argument.

Because Mr. Long is an insured under the Policy and the unambiguous language of the car business exclusion in the Policy applies to the facts of this case, there is no coverage for the accident that occurred on May 5, 2014, in St. Francis County, Arkansas. State Farm has no duty to provide to Mr. Long a defense to Mr. Matarazzo's suit in the Circuit Court of St. Francis County, Arkansas, Civil Division, Case No. 62CV-2014-217-2, nor to indemnify him for any settlement reached or judgment rendered in plaintiff's favor in that suit, nor to pay on his behalf to Mr. Matarazzo any injuries or damages sustained by Mr. Matarazzo as a result of the May 5, 2014, accident.

The Court notes that there is a dispute regarding State Farm's reliance on and citation to a set of unanswered requests for admission proffered by State Farm to Mr. Long. The Court concludes that there is no need to resolve this dispute at this stage of the litigation, as the Court had no need to consider the unanswered requests for admission in its analysis of the pending motion for summary judgment.

**IV.    Conclusion**

The Court concludes, based on the record evidence taken in the light most favorable to Mr. Matarazzo, that there are no genuine issues of material fact in dispute regarding the contractual terms at issue in this case. The Court has resolved this coverage issue as a matter of law. The Court concludes that the Policy's definition of an "insured" is unambiguous and finds that Mr. Long fits the operative definition, as Ms. Hudson gave her consent for Mr. Long to use her vehicle at the time of the motor vehicle/pedestrian accident. The Court also concludes that the Policy's car business exclusionary clause as it relates to the facts of this case is unambiguous and that Mr. Long's operation of the Infiniti QX56 at the time of the accident was to service the vehicle as a part of his employment with his car wash business. Therefore, his conduct fits the definition of

the car business exclusion in the Policy. The Court grants State Farm's motion for summary judgment (Dkt. No. 41).

By previous Order, this Court denied State Farm's motion for default judgment and, instead, directed State Farm to obtain entry of a Clerk's default against Mr. Long (Dkt. No. 22). State Farm obtained a Clerk's entry of default against Mr. Long (Dkt. No. 23), but State Farm has not petitioned this Court to award monetary damages as against Mr. Long. The Court directs that, if State Farm intends to seek monetary damages as against Mr. Long, State Farm make the appropriate filing with this Court within 14 days from the entry of this Order. *Am. Red Cross v. Cmty. Blood Ctr.,* 257 F.3d 859, 864 (8th Cir. 2001) ("When a default judgment is entered on a claim for an indefinite or uncertain amount of damages, facts alleged in the complaint are taken as true, except facts relating to the amount of damages, which must be proved in a supplemental hearing or proceeding." (quoting *Everyday Learning Corp. v. Larson,* 242 F.3d 815, 818 (8th Cir. 2001) (internal quotation marks omitted))). The Court will enter final judgment only after all pending claims in this matter have been resolved.

So ordered this 2nd day of May, 2017.

_Kristine G. Baker_
Kristine G. Baker
United States District Judge